

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RTP:VTN
F. #2018R01745

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 29, 2021

<u>By Email and ECF</u>

The Hon. Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: <u>United States v. Andre Wilburn</u>
     <u>Criminal Dkt. 19-108 (MKB)</u>

Dear Chief Judge Brodie:

   The government respectfully submits this letter in response to the defendant's <u>pro se</u> September 29, 2021 motion for a detention hearing or release from custody, pursuant to the Bail Reform Act, codified at 18 U.S.C. §§ 3141-3156. <u>See</u> Dkt. No. 48, Letter Motion for Bail Hearing ("Def. Mot."). Counsel for the defendant has not adopted the motion.

   As an initial matter, the government submits that the Court should deny the defendant's motion because the Court is not obligated to entertain <u>pro se</u> motions when the defendant is represented by counsel. Criminal defendants cannot simultaneously exercise their rights to appear <u>pro se</u> and to have appointed counsel. <u>Ennis v. LeFevre</u>, 560 F.2d 1072, 1075 (2d Cir. 1977) (court was not required to consider <u>pro se</u> papers while petitioner was represented by counsel); <u>see</u> also <u>United States v. Tutino</u>, 883 F.2d 1125, 1141 (2d Cir. 1989) (a criminal defendant has no right to represent himself as co-counsel with his own attorney). The decision to grant or deny "hybrid representation" lies solely within the discretion of the trial court. <u>O'Reilly v. New York Times Co.</u>, 692 F.2d 863, 869 (2d Cir. 1982). Accordingly, it is within the Court's discretion to deny the defendant's motion without prejudice until or unless it is adopted by counsel. <u>United States v. D'Souza</u>, No. 88-CR-374, 1992 WL 151920, *2 (E.D.N.Y. 1992) (denying defendant's pro se motions without prejudice to later presentation through counsel); <u>United States v. Parker</u>, No. 08-CR-6270L, 2010 WL 114575, *1 (W.D.N.Y. Jan. 7, 2010) (declining to review <u>pro se</u> motions while the defendant was represented by counsel); <u>Pri-har v. United States</u>, 83 F. Supp. 2d 393, 399 n.2 (S.D.N.Y. 2000) (same).

For the reasons set forth below, the defendant's motion should also be denied on the merits. There is no reason to disturb two prior findings that there is no condition or combination of conditions that will reasonably assure the defendant's future appearance in court and the safety of the community. Accordingly, the defendant's motion should be denied and he should continue to be detained pending trial.

I.  Background

The defendant was arrested in San Diego, California in January 2019, pursuant to an arrest warrant issued in September 2018, by a United States Magistrate Judge for the Eastern District of New York. At a hearing conducted on January 29, 2019, in the Southern District of California, the defendant waived a detention hearing and was removed to this district in the custody of the United States Marshals Service. Dkt. No. 4.

Before an indictment was filed against the defendant in this case, the defendant was charged in a second case (the "Fraud Case"), by a criminal complaint charging the defendant and others with conspiracy to commit access device fraud, filed on February 15, 2019. 19-MJ-147 (SMG).

On February 19, 2019, the defendant made his initial appearance on both cases in this district, and an order of detention was entered based on a finding by the duty magistrate judge that the defendant had not presented credible sureties to assure his appearance. Dkt. No. 6.

On February 28, 2019, an indictment was filed in this case charging the defendant with sexual exploitation of a child and possession of child pornography ("CP"). Dkt. No. 8. Approximately two months later, a superseding indictment was filed to add three additional counts of possession of CP. Dkt. No. 13.

On March 15, 2019, an indictment was filed in the Fraud Case, charging the defendant with aggravated identity theft and related crimes, under Criminal Docket No. 19-139 (RJD).

On October 24, 2019, the defendant pleaded guilty in the Fraud Case to one count of aggravated identity theft and one count of access device fraud before Magistrate Judge Lois Bloom. Fraud Case Dkt No. 51. On or about September 10, 2021, following numerous requests by the defendant (through counsel) to adjourn sentencing, the defendant filed a pro se motion to withdraw his plea of guilty in the Fraud Case. Fraud Case Dkt. No. 104. Prior appointed counsel did not join in the defendant's application and was subsequently relieved as counsel by Judge Dearie. Attorney Samuel Gregory was appointed on or about October 4, 2021. Fraud Case Dkt. No. 109. To date, Mr. Gregory has not joined in the defendant's motion to withdraw his guilty plea.

At the time the defendant filed his motion to withdraw his guilty plea, he was awaiting sentence and faced a statutory minimum sentence of 24 months' imprisonment for his conviction of aggravated identity theft. According to the Presentencing Report ("PSR")

prepared by the United States Probation Department in connection with the Fraud Case, the defendant's effective Guidelines range is 54 to 61 months.  PSR ¶ 74.

The defendant's Fraud Case stems from his role in a criminal conspiracy in which he and a co-defendant obtained stolen personal identifying information ("PII"), including credit card account numbers, and used the PII to purchase Amtrak reservations.  The defendant then cancelled or exchanged those reservations for Amtrak eVouchers.  The defendant and his co-defendants then sold those eVouchers online at websites including eBay.com and craigslist.com.  The defendant is responsible for a loss of nearly half a million dollars to Amtrak.

As part of the investigation of the above-described scheme, law enforcement agents obtained a warrant authorizing the search of the defendant's Google Drive account, which was believed to be used by the defendant in furtherance of the fraud conspiracy.  During the execution of that search warrant, agents identified images of CP.  Subsequently, agents obtained warrants to search the defendant's Google Drive and his apartment for evidence of possession of CP and related crimes.  The evidence revealed that the defendant possessed more than 100,000 images of CP on four different electronic data storage devices.  Among the recovered images were approximately 15 images that the defendant, in 2016, took of the then two-year-old daughter of a person known to the defendant.  The images were taken in the defendant's apartment.

The defendant previously moved for temporary release due to his possibly contracting COVID-19 while incarcerated at the Metropolitan Detention Center ("MDC").  Dkt. No. 17.  The defendant presented a bail package, which included the same two suretors referenced in the defendant's pending motion, and he consented to home confinement and electronic monitoring.  Id. at 14. The government opposed and argued that the defendant was both a danger to the community and a risk of flight. Dkt. Nos. 18, 20.  Magistrate Judge Roanne L. Mann agreed with the government and denied the defendant's motion following a hearing held on April 23, 2020.  Dkt. No. 20.

The defendant again moves for release from custody, but offers no basis for disturbing the prior findings of dangerousness and risk of flight.  Moreover, the bail package he proposes is less restrictive than the one offered last year.  See Def. Mot. at 16 (defendant argues that a condition prohibiting the defendant from having unmonitored access the internet is an "unrealistic condition").

Section 3142(f) of the Bail Reform Act states that a detention hearing may be reopened at any time before trial if "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f).  "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event."  United States v.

Esposito, 354 F. Supp. 3d 354, 358-59 (S.D.N.Y. 2019).  The defendant has not proffered any new and material information, and accordingly, there is no basis for reopening the detention hearing.

II.     The Defendant Is a Flight Risk and a Danger to the Community

Pursuant to the Bail Reform Act, the charges in the superseding indictment pending before the Court carry a statutory presumption that no condition or combination of conditions will reasonably assure the defendant's appearance in court and the safety of the community. 18 U.S.C. § 3142(e)(3)(E).  Below, the government assesses the most salient factors for the Court's consideration, pursuant to 18 U.S.C. § 3142(g).

First, the charges in the superseding indictment are extremely serious and bear directly on the issue of danger that the defendant would pose to the community if he were to be released.  The defendant is charged with possessing more than 100,000 images of CP that he collected for several years on four different electronic devices.  Even more disturbing is that the defendant has not only collected a vast cache of CP but has also produced images of CP of a two-year-old child who was temporarily placed in the defendant's care by an individual who trusted the defendant.  "No one questions that child pornography is an insidious offense since it takes advantage of a particularly vulnerable segment of society, children." United States v. Valerio, 9 F.Supp.3d 283, 289 (E.D.N.Y. 2014) (quoting United States v. Schenberger, 498 F.Supp.2d 738, 742 (D.N.J. 2007).  As the Third Circuit has pointed out in connection with Congress's findings on Section 2251, "Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.'" Valerio, 9 F. Supp.3d at 289 (citing United States v. MacEwan, 445 F.3d 237, 250 (3d Cir. 2006).  The defendant's bald claim that he does not present a danger to the community (Def. Mot. at 17), despite the abhorrent conduct with which he is charged, is unfounded.  The clear and convincing evidence shows that the defendant is a significant danger to children and to the community generally.

Second, the weight of the evidence against the defendant is strong.  The thousands of CP images found on the defendant's electronic storage devices are damning.  The photographs of the above-mentioned two-year-old child were taken in the defendant's home, where unique characteristics of the defendant's home are visible, and depict parts of the defendant's body.  The child depicted in those photographs has been identified and the government can establish the means and methods by which the defendant photographed and otherwise exploited the victim.

Third, the defendant's risk of flight is significant.  The defendant was arrested on January 16, 2019, in the Southern District of California, where he had fled once he knew he was wanted by law enforcement authorities.  The defendant knew that he was being sought by federal agents because agents had conducted an authorized search of his apartment

in September 2018 and because agents had spoken with members of the defendant's family in December 2018 in an attempt to determine the defendant's whereabouts.

The clear and convincing evidence establishes that the defendant absconded to a state where he has no known family or relatives because he wanted to avoid apprehension. Text messages exchanged between the defendant and a person known to the government ("Witness") approximately two weeks prior to his arrest demonstrate that he was "on the run" from law enforcement:

| | | |
|---|---|---|
| Witness: | | Why are you on the run? |
| Defendant: | | Dumb [stuff], I caught up in the glamorous life and in the last year and a half, I took great risks to support it. |
| Witness: | | Like what? |
| Defendant: | | New [stuff], identity theft mostly<br>By the way, the aforementioned information is not to he [sic] disclosed to anyone. |

Prior to his arrest, the defendant also exchanged text messages with the Witness about possessing and potentially using a New York State driver license in someone else's name. The defendant sent a picture of the identification card and wrote, "IDs aren't easy to come by . . . unless you make em at home . . . but then you can't drive." The defendant's statements are especially noteworthy because evidence gathered during the investigation of the fraud case revealed that the defendant had equipment to make forged credit cards and identification cards in his home. Access to fraudulent identification documents undoubtedly increases the risk of flight posed by the defendant.

Despite the defendant's prior history of evading law enforcement, the defendant concludes that he would not be a flight risk. He submits that his mother and his girlfriend would be a reliable third-party custodians. Def. Mot. at 24-25. It is unclear what, if any, moral suasion either of those individuals have over the defendant under these circumstances.

When federal agents were attempting to locate the defendant and execute the arrest warrant, they interviewed the defendant's mother, in December 2019. She reported, in sum and substance, that (1) she did not know any of the defendant's friends, (2) she did not know if he currently had a girlfriend, (3) she had not seen or spoken to her son in approximately four months, (4) she did not know whether her son was employed, and (5) her son had never visited her home in Wilkes Barre, Pennsylvania. The defendant disputes the veracity of his mother's statements. Def. Mot. at 24. Whether the statements are true or false, they support the government's position that Ms. Wilburn is by no means in a position to serve as a reliable third-party custodian of the defendant. If Ms. Wilburn's statements were truthful, then she was unaware of her son's whereabouts, his source of income and

livelihood, and his personal relationships. Alternatively, if her statements were untruthful, then she demonstrated a willingness to make false statements to law enforcement in order to protect her son from being arrested.

The other proffered custodian is the defendant's girlfriend, Ashley Cotto. The government contests her fitness as a custodian due to the fact that while the defendant was in California fleeing from authorities, Ms. Cotto was staying with the defendant in a hotel. As demonstrated by the text messages described above, the defendant was in California fleeing apprehension by authorities. Ms. Cotto's choice to follow the defendant to California, despite having been raised in New York, suggests that she is not a reliable third-party custodian.

The defendant faces a mandatory minimum sentence of 15 years' imprisonment if convicted in this case and he faces a mandatory minimum sentence of two years' imprisonment in the matter before Judge Dearie. Given the seriousness of the crimes and the substantial penalties that he faces, the government submits that there is no condition or combination of conditions that will reasonably assure his appearance in court and protect the community from the defendant.

III.     The Defendant's Remaining Claims are Meritless

The defendant requests written findings of facts and statements of reasons from the court in connection with the prior detention hearings that were held on January 29, 2019, in the Southern District of California; February 19, 2019, at the defendant's initial appearance in this district; and April 23, 2020, in connection with the defendant's motion for temporary release. Def. Mot. at 2, 18-25. In each prior hearing, the courts' findings were set forth by written order and can be found at Docket Entries 4-6 and 19. Moreover, the defendant may order transcripts of those hearings to satisfy the requirement of written findings set forth in the Bail Reform Act. See United States v. English, 629 F.3d 311, 2019 (2d Cir. 1990) (a written transcript of a detention hearing satisfies the writing requirement of Section 3142(i)).

The defendant also complains that a "probable cause determination" was not established until well after 48 hours of this arrest. Def. Mot. at 2. However, as indicated in the Warrant of Removal (After Waiver of Hearing), issued by a magistrate judge in the Southern District of California, on January 31, 2021, the defendant waived a hearing pursuant to Federal Rules of Criminal Procedure 5.1(a) (and Rule 5(c)) and the case was properly transferred to the Eastern District of New York. Upon the defendant's initial appearance in this district, on February 19, 2019, a preliminary hearing was set for March 5, 2019. On February 28, 2019, an indictment was filed, thereby obviating the need for a preliminary hearing. See Dkt. No 8. The defendant was arraigned on the indictment on March 5, 2019. Dkt. No. 11. Accordingly, there was no violation of the defendant's due process rights.

The defendant further claims that the government has failed to produce or allow for inspection of any affidavits, applications in support of search warrants or search warrants in connection with the investigation of the Fraud Case. Def. Mot at 3. The government produced to defense counsel the following materials, among others, on or about April 20, 2019:

- Application in support of warrant to search Wilburn apartment (18 MAG 7663), which includes as Exhibit A (i) the initial application for warrant to search Wilburn's apartment (18 MAG 7476), (ii) an application for warrant to search information from received from Google, and (iii) an application for a warrant to search information stored by Google (AW000001-AW000114);
- Application for warrant to search information stored by Apple (AW000115-AW000149); and
- Application for warrant to search information stored by eBay (AW000150-AW000171).

The defendant further asserts that the warrant to search the defendant's home is "newly discovered information that was not disclosed to the defendant by former counsel on or before April 23, 2020." Def. Mot. at 6. However, as noted above, the affidavit in support of that search warrant was disclosed one full year in advance of the April 2020 detention hearing. Moreover, the lawfulness of the search warrant (which counsel has not contested) does not bear on the defendant's dangerousness to the community, nor his risk of flight.

Throughout the defendant's motion, the defendant complains that the government proffered evidence to the Court at the detention hearings and in its letter brief opposing release that were not set forth in the indictment. See, e.g., Def. Mot at 7, 14. The defendant fails to recognize that evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings); Ferranti, 66 F.3d at 542 (same); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same); United States v. Epstein, 425 F. Supp. 3d 306, 313 (S.D.N.Y. 2019) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [release/remand] hearing." (citing 18 U.S.C. § 3142(f)(2)). As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffers. See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131). Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of

7

> Evidence do not apply at bail hearings; thus, courts often base
> detention decisions on hearsay evidence. Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004). Accordingly, the defendant's complaints that the government relied on allegations that were not contained in either the criminal complaint or indictment are without merit.

The defendant also raises a claim that his Sixth Amendment right to counsel has been violated by his incarceration at the MDC. Def. Mot. at 28-29. He sets forth difficulties that he has faced in obtaining legal visits, but he has not explained how he has been uniquely harmed by the MDC's protocols. Id. at 29. It is undisputed that during the height of the pandemic, the Bureau of Prisons ("BOP") temporarily suspended in-person legal visits. However, the BOP continued to offer inmates the ability to make confidential attorney calls. On February 16, 2021, the MDC resumed in-person legal visits, which are now available by appointment seven days a week. MDC Notice for Legal Visits, available at https://www.bop.gov/locations/institutions/bro/bro_legal_visit_2106.pdf. Under the circumstances of the global pandemic, any temporary impairment of the defendant's access to counsel (relative to the time prior to the outbreak) does not amount to a violation of the Sixth Amendment. Numerous courts have endorsed this proposition. See, e.g., United States v. Ellison, No. 18-CR-834-9 (PAE), 2020 WL 1989301, at *1-2 (S.D.N.Y. Apr. 27, 2020) ("[Defendant]'s general grievance about limited communications with counsel in the weeks since the pandemic struck do not establish a constitutional violation in his or any other case."); United States v. Rico, No. (S1) 18-CR-661 (PGG), 2020 WL 1934989, at *6 (S.D.N.Y. Apr. 21, 2020); United States v. Guzman, No. 20-CR-56 (PAC), 2020 WL 1700253, at *2 (S.D.N.Y. Apr. 8, 2020) ("To accept the defendant's generalizations about impediments to access to counsel and argument that release is necessary, especially in a case where no trial, hearing, or briefing schedule has been set yet, would logically result in the wholesale release of pretrial inmates"); United States v. Bothra, No. 20-1364, 2020 WL 2611545 at *2 (6th Cir. May 21, 2020).

IV.    <u>Conclusion</u>

        For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion for release. The Court's permanent order of detention should remain in effect because the defendant poses a serious danger to the community and a risk of flight, and he has not presented a basis for his release.

                                                          Respectfully submitted,

                                                          BREON PEACE
                                                          United States Attorney

                          By:          /s/
                                                 Virginia Nguyen
                                               Special Assistant U.S. Attorney
                                               (718) 254-6280

cc:    Samuel Gregory, Esq. (by email and ECF)
        Clerk of the Court (MKB)