RECEIVED JAN 07 2022 PRO SE OFFICE

December 30, 2021

Delivery via First-Class mail (USPS)

The Honorable Margo K. Brodie
Chief United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

in re: United States v. Andre Wilburn, case No. 19-CR-108 (MKB)

Supplement to Motion to Dismiss for Speedy Trial Violation (Constitutional)

Dear Chief Judge Brodie:

Attached is a Trulincs copy of the defendant's letter-motion dated December 10, 2021 moving the Court to dismiss for Sixth Amendment Speedy Trial violations. Additionally, the defendant respectfully requests the Court to amend the motion with additional information pertinent to the prejudice factor of the Barker analysis.

Prejudice

The defendant briefly mentioned that the government intentionally consenting to delays was to "merely convict" and not "to seek justice." American Bar Association ("ABA") Standard for Criminal Justice 3-1.1, "The Function of the Prosecutor" specifically states that "[t]he prosecutor must exercise sound discretion in the performance of his or her functions." The defendant demonstrated how the government has successfully secured a tactical advantage by withholding evidence, acquiescing in delays, and purposely going against the "canons of the legal profession." Although the U.S. Department of Justice has taken the position that "[t]he ABA Standards for Criminal Justice have not been adopted as official policy by the Department... it is recommended all U.S. Attorneys familiarize


RECEIVED
JAN 07 2022
PRO SE OFFICE

themselves with them." Historically, the Supreme Court has held that the prosecutor's job is not merely to convict, ~~especi~~ especially not to convict innocent defendants. Bieger v. United States, 295 US 78, 88 (1935)(The prosecutor's duty in a criminal prosecution is to seek justice. Therefore, the prosecutor should "prosecute with earnestness and vigor" but may not use "improper methods calculated to produce a wrongful conviction.") This is serious and blatant prosecutorial misconduct which distorted the integrity of the judicial process. Impaired defense "skews the fairness of the entire [criminal justice] system," and may result in the conviction of an innocent person. Barker v. Wingo, 407 US 532 (1972).

The "defendant's Sixth Amendment right to a speedy trial were violated... because [he] endured an extraordinary delay, suffered anxiety occasioned by the government's nearly "three-year acquiesce in pretrial delays, and he "repeatedly requested trial." United States v. Black, 918 F.3d 243 (2d Cir 2019) "[T]he Court and the government owe an 'affirmative obligation' to criminal defendant's and to the public to bring matters to trial promptly." Black, 918 F.3d at 253. Moreover, it's been said that "the time spent in jail is simply dead time." Barker, 407 US at 532-33. The Court granting numerous continuances, thus delaying case for years, was unfair to the defendant and the victim. United States v. Cosby, 924 F.3d 329 (7th Cir 2019)("Fairness to minor victim weighed strongly in favor of denying the [continuances].") When former and current "Counsel [did] not assert" on his behalf, the defendant "alert[ed] the Court directly of his desire to not waive [his speedy trial] rights." United States v. Hall, 181 F.3d 1057, 1060-61 (9th Cir 1999)

~~The defendant~~
The defendant was substantially prejudiced by the deleterious effect of the Sixth Amendment speedy trial violation. The government played a major role in the harm of the defendant by seizing all of the defendant's digital data, thereby eliminating all digital media, artwork, business documents, music, photos, videos, and thousands of other ~~irrelevant~~ irrelevant personal files causing extreme anxiety that compounded and irreparably prejudiced

defense. Jolly v. Coughlin, 76 F. 3d 468, 482 (2d Cir 1996) (stating that there is a "presumption of irreparable injury that flows from a violation of constitutional rights.")

The defendant has maintained his innocence and his case was further prejudiced by former and current counsel refusing to allow the defendant to inspect or copy the lionshare of the aggravating material evidence during this almost three-year delay. Federal Rules of Criminal Procedure, Rule 16(E). The government acted in bad faith ~~incoming~~ by purposefully demanding detention knowing that counsel (or former counsel) was not capable of presenting this evidence to the defendant, thereby securing a tactical advantage, to ensure a conviction, not in the name of justice. Kyles v. Whitley, 514 US 419, 433 (1995) (Evidence is "material" where there is a reasonable probability that its disclosure would have produced a different result at trial.); Brady v. Maryland, 373 US 83 (1963); United States v. Agurs, 427 US 108 (1976) (The prudent prosecutor will resolve doubtful questions in favor of disclosure.) It is important to note that, regardless of constitutional requirements, standards of professional responsibility generally require prosecutors turn over all exculpatory or mitigating evidence, without requiring that the evidence, without requiring that the evidence meet a materiality standard. ABA Standards for Criminal Justice, Prosecution Function and Defense Function 3-3.11(a) (3d. ed 1993).

And finally, regarding the Framers' comprehension of the speedy trial right as it existed at the founding, Sir Edward Coke wrote that "the innocent shall not be worn and wasted by long imprisonment, but... speedily come to trial]." E. Coke, Second Part of the Institutes of the Laws of England 315 (1797). Therefore dismissal for a violation of Sixth Amendment Speedy trial ~~statutes~~ is "in the best interests of "the public "the defendant, the system, and indeed, even the government. To require the defendant to stand trial under the circumstances here would... typify the adage that 'justice delayed is justice denied'." United States v. Dowl 394, F. Supp. 1250 (D. Minn. 1975).

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 07 2022 ★

BROOKLYN OFFICE

For the foregoing reasons, the defendant respectfully requests the Court to grant the motion and dismiss the ~~indictment~~ superceding indictment.

I affirm under penalty of perjury that the foregoing is true and correct. Executed on December 30, 2021.

Respectfully submitted,

*Andre W*
Andre Wilburn #73608-298
MDC Brooklyn
P.O. Box 329002
Brooklyn, NY 11232

FROM: 73608298
TO: W Ny, L
SUBJECT: Speedy - Part 1
DATE: 12/11/2021 07:43:01 PM


December 10, 2021

Delivery via First-Class mail (USPS)

The Honorable Margo K. Brodie
Chief United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

in re: United States v. Andre Wilburn, case No. 19-CR-108 (MKB)

Motion to Dismiss with Prejudice for Constitutional Speedy Trial Violation

Dear Chief Judge Brodie:

    Please construe this letter as a formal motion. The defendant, Andre Wilburn without waiving any other motions, and to be considered in addition to and in connection with any previously submitted motions, respectfully moves for an order dismissing all counts in the superseding indictment against the defendant with prejudice pursuant to the Speedy Trial Clause of the Sixth Amendment to the United States Constitution.

    The Sixth Amendment Speedy Trial Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend VI. The right to a speedy trial is essential to protect all presumptively innocent criminal defendants, and it does so by "prevent[ing] undue and oppressive incarceration prior to trial... minimiz[ing] anxiety and concern accompanying the public accusation [,] and ... limit[ing] the possibility that long delay will impair the ability of an accused to defend himself. " Betterman v. Montana, 136 S. Ct. 1609, 1614 (2016) quoting United States v. Marion, 404 US 307 (1971) and citing Barker v. Wingo, 407 US 514, 532-533 (1972). The United States Supreme Court provided a test for the application of the federal Constitutional right to speedy trial in the seminal case of Barker v. Wingo, 407 at 514. Generally speaking, there are four (4) factors to consider when determining whether pretrial delay violates the Sixth Amendment, "length of delay, reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." United States v. Moreno, 789 F. 3d 72, 78 (2d Cir 2015) (quoting Barker, supra at 530). "These factors 'must be considered together with any other circumstances as may be relevant' and 'have no talismanic qualities." United States v. Cain, 671 F. 3d 271, 296 (2d Cir 2012) (quoting Barker, supra at 533). If a violation is established, dismissal of the charge with prejudice is the mandatory remedy. See. Strunk v. United States, 412 US 434 (1973).

Length of Delay

    The first factor serves as a threshold question, Cain, 671 F. 3d at 296. The right to a speedy trial is triggered "by arrest, indictment, or other official accusation." Doggett v. United States, 505 US 647, 655 (1992). No further inquiry is necessary if delay after official accusation is not "presumptively prejudicial." Id. at 652. The Second Circuit has suggested that there is a "general consensus" that more than eight (8) months is presumptively prejudicial and merits further inquiry. United States v. Vassell, 970 F. 2d 1162, 1164 (2d Cir 1992). A court "will only consider the other... factors when the defendant makes a showing 'that the interval between accusation and trial has crossed the threshold dividing ordinary [delay] from presumptively prejudicial delay.'" United States v. Ghailani, 733 F. 2d 29, 43 (2d Cir 2013) (quoting Doggett 505 US at 652).

    The defendant was first charged in a complaint approximately 39 months ago on September 07, 2018 and arrested approximately 35 months ago on January 15, 2019. It's worth noting that, to date, there has never been a trial date set for this case. This is an "extraordinary" delay, Barker, 407 US at 533, and there is no question that the sheer duration of delay is presumptively prejudicial and warrants further consideration of other three Barker factors.

Reason for the Delay

There are three (3) types of Sixth Amendment speedy trial delay: deliberate, neutral, and valid. See Barker, 407 US 531. Deliberate delay, which is delay intended to confer an advantage over a defendant, weighs most heavily against the government negligence and overcrowded court dockets, is less weighty. See id.; Flowers v. Warden, Connecticut Correction Institution, 853 F. 2d 131, 134 (2d Cir 1998)(a 17-month delay due to government dysfunction "might well merit dismissal" in case where greater prejudice to a defendant is established). Delay is "valid" if it is reasonable pretrial delay, see Vassell at 1165; delay caused by proceedings in another jurisdiction, see United States v. Jones, 91 F. 3d 5, 9 (2d Cir 1996); and delays attributable to the defendant, see Davis v. Kelly, 316 F. 3d 125, 127 (2d Cir 2003).

In this case, reasons for the extraordinary delay are the very substantial deliberate delay attributable to effective assistance of counsel, a pattern of a lackadaisical attitude from the government, and a lack of diligence from the Court in setting a trial date and abuse of ends of justice continuances. It's worth noting that as of the date of this letter-motion, the Court has yet to set a trial date in this case, despite the governments fraudulent misrepresentation at the defendant's November 10, 2021 teleconferenced status hearing ("the bail teleconference") that "jury selection [the official first day of trial] is on January 18 [,2022]." The bail conference resulted in a 72-day ends of justice continuance from November 10, 2021 until January 21, 2022, with no valid explanation for the delay. Subsequently, the defendant filed a letter dated November 28, 2021 objecting to the duration of the continuance on December 01, 2021. see Docket #56.

The defendant's case was never designated as complex and there are no co-defendants. However, multiple ends of justice continuances were granted sua sponte for over 10 months following the defendant's arrest due to discover disclosure from the government and discovery review by "the parties," without "finding that the continuance[s] were granted to further ends of justice." United States v. Kelly, 45 F. 3d 45 (2d Cir 1995). During the time following the defendant's arrest until the date of the letter-motion, the Court granted 608 days of nonexcludable ends of justice continuances without "set[ting] forth its reasons for its findings... on-the-record." Zedner v. United States, 547 US 489 (2006). The Court granted former counsel 15 continuances for pretrial motion preparation, although that "time was not automatically excludable" from the speedy trial clock. Bloate v. United States, 130 S. Ct. 1345 (2010). "When granting [a] continuance [the] court must state... its reasons that granting the continuance outweighs... interest in speedy trial." United States v. Richardson, 681 F. 3d 736 (6th Cir 2012). After almost three (3) years, the Court has also completely failed to set a trial date in this case at all. The Supreme Court held that "the primary burden remains on the Courts and the prosecutors to assure that cases are speedily brought to trial," Barker 407 US at 514. "The right [to a] prompt trial" is "fundamental." Dickey v. Florida, 398 US 30, 37-38 (1970). Earlier Supreme Court cases concur that "the right to a speedy trial... is fundamental." Klopfer v. North Carolina, 386 US 213 (1967). Therefore the defendant being denied a speedy trial is the denial of a fundamental Constitutional right. Moreover, the defendant's arrest in the Southern District of California does not justify the Court's failure to set a trial date or bring the defendant to trial. Smith v. Hooey, 393 US 374 (1969) (The fact that the defendant is incarcerated in another jurisdiction does not relieve the government from providing a speedy trial under the Sixth Amendment.)

Incompetent former counsel, James Darrow, "fail[ed] to interview witnesses," Kramer v. Kenma, 21 F. 3d 205, 309 (8th Cir 1994), "discover and present significant mitigating evidence," Williams v. Taylor, 529 US 362, 371 (2000), "move for suppression of evidence," Loaman v. United States, 973 F. 2d 107, 113 (2d Cir 1992), and "subject the prosecutor's case to meaningful adversarial testing," United States v. Cronic, 466 US 648, 658-59 (1984). These unreasonable deficiencies in performance were not strategic and not only ineffective assistance and constructive denial of counsel, but the multiple continuances requested and ultimately granted without the defendant's consent or knowledge was an "actual conflict of interest... by... counsel where attorney was responsible for significant delay" independent of the defendant's wishes. Mathis v. Hood, 937 F. 2d 790 (2d Cir. 1991). Former counsel is responsible for 467 days of unauthorized continuances. Although there are instances where delay in bringing a defendant to trial benefits the defendant, in this case, delay irreparably harmed the defendant's ability to defend himself. Former counsel, James Darrow requested over a dozen continuances, all of them were granted, and most of them were regarding a suppression motion that was not drafted until April 2021 and was never filed (submitted to the Court) (Docket #s 15, 16, 20,21, 22, 23, 24, 25, 26, 28, 31, 32, 33, and 36)

The government displayed a lackadaisical attitude in bringing the defendant to trial under the Sixth Amendment. United States v. Giambrone, 920 F. 2d 176, 180 (2d Cir 1990) ("the court may properly take into account a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of dilatory practices on the part of the United States Attorney's Office in the district in question.") The government failed to object to sua sponte and defense counsel's continuances or deal with pretrial matters in a timely and diligent way, demonstrating a "truly neglectful attitude [and] a pattern of neglect" by sitting on this case for years. United states v. Wells, 893 F. 2d 535, 539 (2d Cir 1990). Special Assistant United States Attorney Virginia Nguyen was presumably cognizant of the Speedy Trial Clause since she was a New York State district attorney for almost a decade prior to her becoming a special assistant government attorney, 28 USC 543; 28 USC 515, in 2017. The case does not simply fall of the the radar given the multiple continuances granted by the Court. The considerations, combined with the following, signify a continuing neglectful attitude during the almost 3 year post-arrest, pretrial delay, as opposed to an isolated, unwitting violation of the defendant's Constitutional right.

The government's arbitrary and oppressive acts intentionally kept the defendant detained in deplorable conditions at Brooklyn Metropolitan Detention Center ("MDC Brooklyn") to prevent him from obtaining and investigating exculpatory evidence in his apartment. The defendant's apartment was ultimately burglarized after being searched by law enforcement on September 06, 2018 and in March 2019, permanently prejudicing his defense. The government knew the defendant wanted the ability to investigate his apartment, but intentionally prevented it. The defendant was so desperate to gain access to his property in order to prove his innocence, that this was even brought up by former counsel James Darrow at the February 05, 2020 status conference. The government intentionally recommended detention and acquiesced to multiple continuances effectively eliminating any mitigating physical evidence in order to secure a tactical advantage at trial.

The government's detention recommendation was a deliberate and vexatious act to prevent the defendant from contacting a mitigating [defense] witness, has since become unavailable, due to his death. The government arbitrarily kept the defendant detained for almost 3 years in order to "drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his friends, and family." United States v. Bert, 814 F. 3d 70 (2d Cir 2016). The government knows very well that a detained defendants ability to marshal a defense is significantly impaired, effectively ensuring victory for the prosecutor. This clearly demonstrates a "delay [that was] purposeful and oppressive and caused by [a] deliberate act." United States v. Simmons, 338 F. 2d 804 (2d Cir 1964). These deficiencies convincingly show an arbitrary and intentional pattern of neglect and the deliberate delay Ms. Nguyen employed in an attempt to secure a victory and a strategic advantage over the defendant at trial. To date, the government has failed to schedule or even file a motion attempting to schedule a trial date or bring this to the courts attention.

It's worth noting that the defendant has not waived his speedy trial rights, nor consented to the extended continuances in writing on-the-record. United States v. Gambino, 59, F. 3d 353, 360 (2d Cir 1995) (A criminal defendant can only waive his speedy trial rights by failing to invoke them before trial or plea.) Waiver is "an intentional or voluntary relinquishment of a known right," Black's Law Dictionary, Abridged 6th Ed., (1991). Courts should indulge every reasonable presumption against waiver, and they should not presume acquiescence in the loss of fundamental rights.

Assertion of Speedy Trial Rights

Since meeting former counsel James Darrow in February 2019, the defendant has repeatedly asked former counsel to alert the Court of his desire to expeditiously try this case in order to prove his innocence. Instead, former counsel informed the defendant that he would be incarcerated [detained pretrial] for at least 18 months because of the federal nature of the case and "voluminous discovery." The defendant believed long former counsel that long pretrial delays were typical because it was a federal case and the defendant has never been in jail before so he had no comparative data. Additionally, the case was never designated as complex on-the-record as suggested by former counsel.

In March 2021, the defendant sent a letter to the Court requesting additional counsel and expressing his desire for trial. Docket # 34. Prior to this letter, the defendant was unaware of his right to address the Court independently of his ineffective appointed counsel.

In August 2021, the defendant sent a letter-motion to the Court requesting a copy of the grand jury minutes [transcript] because of specified improprieties with the proceeding, including unauthorized persons in attendance and grand juror demographic fallacies. The defendant also asserted his desire for a prompt trial in order to prove his innocence. Docket # 46.

In November 2021, the defendant wrote a motion specifically asserting his Sixth Amendment speedy trial right. Docket # 56.

In December 2021, the defendant again wrote the Court to assert his speedy trial right in a letter informing the Court of his appointed counsel Samuel Gregory's unprofessional and antagonistic conduct.

Former counsel's incompetence, ineffective assistance, and fraudulent misrepresentations of facts of law prevented the defendant from addressing the Court sooner than March 2021. It was not until the defendant's mother sent Pacer updates and docket sheet information to the defendant in early 2021 that the defendant was accurately assess why these delays occurred. This also why the defendant began to research the United States Constitution and he quickly learned of his right to be heard by the Court. Former counsel failed to assert or demand a speedy trial as requested by the defendant on numerous occasions.

Despite being hindered in the sense of being able to assert his speedy trial right as desired, the defendant does not "waive his speedy trial rights" since that could only happen by "failing to invoke them before trial..." Gambino, 59 F. 3d at 360. There is no fixed point in the criminal process when the government can put a defendant to a choice of either exercising or waiving his right to a speedy trial. Barker, 407 US at 531. The demand-waiver doctrine provides that a defendant waives any consideration of his right to a speedy trial for any period to which he has not demanded trial. Such an approach, by presuming waiting of a fundamental right from inaction, is inconsistent with the United States Court's pronouncements on waiver of Constitutional rights, the interests of the defendant, and the interests of society.

Since learning of the Constitutional speedy trial clause, the defendant has not "lack[ed]... timeliness, vigor or frequency" in his assertion of the right. Rayborn v. Scully, 858, F. 2d 84, 93 (2d Cir 1988).

Prejudice as a Result of the Delay

The fourth step of the inquiry examines the prejudice to the defendant as a result of the delay. This can be shown in a variety of way. However, there are some delays that are so long and unjustified that prejudice is presumed even if the defendant failed to assert speedy trial rights during the delay. Although this is true, the defendant has also asserted and demanded a speedy trial during the delay of this case.

There are three kinds of Sixth Amendment speedy trial prejudice that are relevant under Barker: imprisonment, minimization of anxiety, and impairment of the defense. Barker, 407 US at 532. The defendant has suffered all three types of prejudice, but the last of the three is the most serious, id., and has been prominent in dismissals on Constitutional speedy trial grounds.

The defendant, due to the delay, government neglect, and ineffective assistance of counsel has been unjustifiably chilled in his ability to mount a defense. United States v. McCrudden, 222 F. Supp 2d 352, 356 (E.D.N.Y. 2002).

Since the defendant first learned of the charges against him, he has proclaimed and maintained his innocence and asked former counsel James Darrow to ensure preservation of his property and effects in his apartment in order to prove it. Former counsel advised the defendant to "let that stuff go," even though he knew the defendant's property and effects contained items that are irreplaceable and even more, former counsel knew of specific documentary evidence that would have allowed him to contest the government's theory. Former counsel knew that the defendant had been subletting a spare bedroom in his apartment on Airbnb and even rented out his living room couch short term for extra money since 2012. Former counsel knew that that the defendant kept a record of all guests from the Airbnb platform and also the guests who paid cash throughout the years in a safe on a bookshelf in his apartment. The safe was disguised as an actual book, but hollowed out with a small fireproof safe that required a key to enter. Inside of that safe was a book that contained the names, phone numbers, and social media account(s) for all guests (the "logbook"). The defendant filled out the logbook upon each guests departure. Former counsel failed to investigate apartment to retrieve the logbook. "The passage of time has frustrated [the defendant's] ability to establish his innocence," United States v. MacDonald, 435 US 850 (1978), since the logbook was completely lost and made unavailable for trial due to the defendant's apartment being burglarized during his almost 3 years of oppressive pretrial detention at MDC Brooklyn. United States v. Sarvis, 523 F. 2d 1177 (DC Cir 1975) (Prejudice to defendant may result from incarceration during time he awaits trial.)

Evidence of the defendant being an Airbnb host is still available on the Internet, but the guest logbook, which contained more than just Airbnb guests, namely, the guests who paid the defendant in cash, has been completely lost. There is clear evidence of guests staying in the defendants apartment on September 06, 2018, the day the search warrant was executed on the defendant's apartment. See Exhibit A - WIL000338-339. The government knew the defendant frequently had short term guests staying in his apartment, because the agents executing the search of the defendant's apartment knew, yet she purposefully and negligently acquiesced in a lengthy trial delay to adversely affect the defendant's ability to raise the short term subletting defense so as to undermine the fundamental fairness of trial. The government deliberately consented to an approximately 3-year delay in order to give herself a strategic advantage, knowing that the defendant would have difficulty remembering the circumstances surrounding a single days events in 2016, over 5 years ago. United States v. Mann, 291 F. Supp 268 (S.D.N.Y. 1968).

The length of delay and ineffective assistance of counsel in failing to interview witnesses has subsequently led to the unavailability of a close friend of the defendant's who would have testified about the contents of the logbook and confirmed short term subletting, since he is one of the few who has seen the logbook and also interacted with the defendants guests on multiple occasions. The witness, Corleone Davis died approximately one year after the defendant arrived at MDC Brooklyn. Had the government and the Court moved for trial in a reasonable time after the defendant's arrest on January 15, 2019, the guest logbook would not have been loss or destroyed and the defense would have been able to elicit specific testimony, regarding the existence and location of the logbook, prior to his untimely death. All of this would have allowed the defendant to not only contest the government's theory that it is him in the photos, but also demonstrate the defendant's actual innocence. The government knew that the extraordinary delay would adversely affect the preparation of the defense and all but ensure victory for the government. The victory would come from intentionally subjecting the defendant to extremely harsh, inhumane, and oppressive conditions, therefore guaranteeing a plea regardless of innocence. The government also assumed she would be insulated from speedy trial consequences by deliberately failing to object to lengthy delays because she does not initiate the continuance. Instead, this is a clear and convincing pattern of neglect, dilatory conduct, and delay from the prosecutor and a demonstrable example of "actual prejudice to the defendant. United States v. Yagid, 528 F. 2d 962 (2d Cir 1976) (In determining relevancy of considerations of speedy trial claims, test is not presumed prejudice, but actual prejudice.)

The government was aware of the anxiety the defendant suffered attempting to secure and ultimately losing all property and effects from his apartment, his lowered credit score due to the inability to pay bills in jail, curtailed his associations with friends, family, and colleagues, and plethora of prejudices due to deficiencies at MDC Brooklyn, yet failed to object to lengthy continuances, substantially prejudicing the defendant. The government deliberately recommending detention despite knowledge of all of the above demonstrates that the Special Assistant United States Attorney Virginia Nguyen was improperly motivated by victory and not justice. United States v. Barbanell, 334 F. Supp. 1046 (S.D.N.Y. 1971) (The warrant dismissal, there must be showing of some prejudice to defendant or improper motivation on part of prosecution.) United States v. Cumberbatch, 438 F. Supp. 976 (S.D.N.Y. 1976) (same). The government knew that a long delay would prejudice the defendant

and interfere with his liberty and property interests.

In addition to the above, the government also failed to preserve the secure digital ("SD") micro card attached to the surveillance camera in the defendant's living room, which "might be expected to play a significant role in the [defendant's] defense." This evidence "possess[ed] an exculpatory value that was apparent before the evidence was destroyed" and was "of such a nature that the defendant would be unable to obtain comparable evidence by other available means." This SD micro card could have very well shown exactly who was in the defendant's apartment on the day in question in 2016. The seminal case of California v. Trombetta, 467 US 479, 488 (1984), held that the United States Constitution requires the government to preserve this type of evidence. see also Strickler v. Greene, 527 US 263, 281-82 (1999).

There are numerous incarceration-based prejudices as well including: inadequate access to counsel, inadequate access to the courts, and an intentional hindrance of both. see Docket # 48. These are both Constitutional violations in addition to the inhumane conditions and lack of subsistence within MDC Brooklyn. The defendant was routinely subjected to second-hand smoke, being fed from a multipurpose utility cart used for trash and transporting dirty clothes and mattresses, receiving hot water through a locked door in a moldy cereal bag, dirty serving trays, insufficient food portions, expired food, fifty (50) dollar commissary limits for all food and personal items when laundry detergent costs $6.25 and dandruff shampoo costs $8.50. Showers at the facility are covered in black mold and were "fixed" by having inmates paint over the mold instead of having it removed professionally. In December 2020, the defendant contracted COVID-19. There is almost no access to sunlight at all. And the facility regularly breaks Bureau of Prison policy by serving breakfast more than 14 hours after dinner.

As recently as 09/26, 09/27, 10/13, 10/14, 10/15, 10/16, 10/17, 10/19, 10/22, 10/31, 11/07, 11/18, 11/19, 11/24, 11/28, 12/01, 12/05, and 12/08 the defendant was served breakfast more than 14 hours after dinner causing hunger. The air vents in the facility are almost completely covered in black dust. On court dates, the defendant is awaken at 5:00 AM to intentionally deprive him of sleep and adequate nutrition at his appearances. The defendant has also been subjected to 22-23 hour lockdowns for well over a year despite clearly having a desire to fight his case and actively defend himself. The defendant attempted to use the administrative grievance process at the facility on several occasions, see Docket # 48, until he was eventually intimidated and retaliated against by MDC Brooklyn staff on July 09, 2021, effectively silencing him.

    And since that day in July, the defendant has not received mail as required by the First Amendment to the United States Constitution. The defendant's incoming and outgoing correspondence, including legal [special] mail has been intentionally tampered with, substantially prejudicing his defense. "Mail from a court... is privileged and may be opened only the verify its contents and only in the presence of the addressee," Smith v. Shimp, 562 F. 2d 423 (7th Cir 1977), the defendant's privileged mail was opened by institution staff prior to it being delivered to the defendant. The defendant is able to "establish that his privileged mail has been opened by [facility staff] in his absence," causing actual prejudice to his defense, therefore he is "entitled to relief." Wolff v. McDonnell, 418 US 539 (1974). Facility staff hindering mail is a Constitutional violation since "under the First Amendment, prisoners have a right to the free flow of incoming and outgoing mail." Johnson v. Goord, 445 F. 3d 532, 534 (2d Cir 2006). The Second Circuit has determined that as few as two (2) incidents of mail tampering could constitute an actionable violation if the tampering unjustifiably chilled the prisoners right of access to the courts or impaired the legal representation received. Washington v. James, 782 F. 2d 1134, 1139 (2d Cir 1986). The defendant's legal mail has either been opened outside of his presence or not delivered at all substantially prejudicing his defense and causing "actual harm" due to the "tampering." Davis v. Goord, 320 F. 3d 346, 351 (2d Cir 2003). The "ongoing practice of censorship [is] unjustified" and supports the "substantial government interest" in victory as opposed to justice. Washington, 782 F. 2d at 1139; 28 CFR 540.18. Unfortunately, the defendant is unable to mail envelopes and other proof to the Courts as his outgoing mail

    The defendant did not bear responsibility for the Sixth Amendment violation in this case. The defendant actually sought release from his oppressive, inhumane, and substantially prejudicial detention several times since his arrest and is even in the process of appealing the last bail denial on November 10, 2021, Docket # 55, without counsel's assistance despite his letter implicating otherwise. Docket # 57. The Court unjustifiably granted former counsel James Darrow 467 days of continuances without the defendant's knowledge or consent, forfeiting his constitutional right to a speedy trial and due process. The Court also excluded sua sponte 607 days as "ends of justice" continuances with no valid explanation, thereby insufficiently tolling the speedy trial clock. To date, there is no trial date set in this case, further exacerbating the defendant's speedy trial rights with each passing day. The government has made no effort whatsoever to accelerate the defendant's trial. The lackadaisical attitude demonstrates a pattern of delay and a clear tactical advantage for the government due to the delay and the defendant's extremely oppressive detention. The defendant sufficiently and vigorously asserted his right. And the prejudice resulting from the loss of the guest logbook combined with the death of Mr. Davis due to the delay completely halted the defendant's ability to raise a defense at trial. All of this undermined the fundamental fairness of the judicial process requiring dismissal of the April 22, 2019 superseding indictment with prejudice for a Sixth Amendment speedy trial violation.

    For the foregoing reasons, the defendant respectfully requests that the Court grant his motion for dismissal of the superseding indictment returned on April 22, 2019 with prejudice.

Respectfully submitted,

/s/ *[signature]*
Andre Wilburn #73608-298
MDC Brooklyn
PO Box 329002
Brooklyn, NY 11232

Andre Wilburn #73608298
MDC Brooklyn
PO Box 329002
Brooklyn, NY 11232

The Honorab[le]
Chief United St[ates]
United States D[istrict]
Eastern Distri[ct]
225 Cadmo[n]
Brooklyn, NY

[URGENT]
COURT DOCUMENTS



le Margo K. Brodie
tes District Judge
istrict Court
of New York
Plaza East
11201



SPECIAL MAIL

sent: 12/30/2021